Filed 8/26/13  In re D.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re D.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E058642 |
| Plaintiff and Respondent, | (Super.Ct.No. J240936) |
| v. | OPINION |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

1

I

INTRODUCTION

J.G., father, appeals from a judgment of the juvenile court terminating his parental rights to his daughter. Father argues the juvenile court should have applied the beneficial parental bond exception. Mother has not appealed. After thoroughly reviewing the record, we reject father's appeal and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND[1]

*A. Detention*

CFS[2] filed an original dependency proceeding (§ 300) in September 2011, concerning D.G., born in December 2010. The petition alleged the parents had failed to protect the child because of the parents' substance abuse and domestic violence and because mother engaged in a physical altercation with sheriff's deputies when she was detained on September 23, 2011, while driving with the nine-month-old child unrestrained in her lap instead of in a car seat. At the time she was detained, mother was breastfeeding and the child tested positive for amphetamine. Mother admitted using methamphetamine the day before. The child also had an undetected cardiac condition requiring treatment and surgery.

---

[1] All statutory references are to the Welfare and Institutions Code unless stated otherwise.

[2] San Bernardino County Children and Family Services.

At the detention hearing on October 3, 2011, the court found a prima facie case had been demonstrated under section 300, subdivision (b), and ordered the child detained. After discharge from the hospital, the child was to be placed in a special needs foster home.

B. *Jurisdiction and Disposition*

According to the jurisdiction and disposition report, mother said she had engaged in a shoving match with father on September 22, 2011, and he had hit her in the mouth. She fled their home because she was afraid. She admitted endangering her child while driving without child restraints and admitted using methamphetamine. Mother had a criminal record of resisting an officer, child abuse, and forgery. (Pen. Code, §§ 69, 273, subd. (d), and 410, subd. (d).) Father blamed mother but he admitted using methamphetamine. The parents needed to learn to care for a medically fragile child before she could be returned to them. They also need to participate in drug rehabilitation and domestic violence counseling.

While hospitalized, the child was diagnosed with failure to thrive, possible nonaccidental trauma, a feeding disorder, and various heart-related conditions. Open heart surgery was indicated. The parents had visited the child in the hospital and received instruction on feeding her and administering medication. Mother nursed the child— contrary to recommendations.

At the jurisdictional-dispositional hearing, the court sustained the dependency petition, finding the allegations were true by a preponderance of evidence. The child was removed and the parents were ordered to have reunification services and visitation.

3

*C. Six-Month Status Review*

In its six-month status review report for April 2012, CFS recounted that the child had open heart surgery in November 2011, after which she showed significant improvement. CFS recommended parents have additional services. Mother was struggling emotionally and was withdrawn and disengaged. She was not confident about being able to care for the child. Mother had negative drug tests and she had completed parenting education. She was still receiving services for substance abuse, anger management, and domestic violence. She had begun individual counseling in April 2012. Mother was unemployed and had no means of support.

Mother and father were sharing a studio apartment. Father was also struggling and withdrawn. He had negative drug tests. He demonstrated a stronger bond with the child than mother.

Prognosis was poor for returning the child to the parents. Neither parent was competent. The foster mother indicated the child needed time and attention due to her fragility and feeding difficulties. None of the parental relatives were appropriate.

At the six-month review hearing in April 2012, father submitted certificates of completion for a parenting program and a drug outpatient treatment program. Father was also attending Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings. The court ordered the child remain in custody and reunification services continued. The court approved unsupervised visitation in May 2012.

*D. 12-Month Status Review*

In October 2012, CFS recommended terminating reunification services and setting a hearing on a permanent plan of adoption. The child had an enlarged, weakened heart although she was improving. She was assessed as "globally delayed" and needing significant services. The foster mother observed anger, anxiety, abandonment, and other behavioral issues. The child was strongly attached to the foster mother, wanting to be held constantly and becoming upset if she left the room.

Mother had completed her case plan and had individual therapy and a psychological evaluation. Unfortunately, her counseling attendance was erratic between April and October 2012. She relapsed in September 2012 and used methamphetamine. Mother had a troubled family history and a volatile relationship with her own mother after her father had died in a car accident when her mother was driving. Mother was not bonded with the child and struggled to find work and a residence.

Father had missed drug tests and his work schedule interfered with reunification services. Nevertheless, he had successfully attended eight counseling sessions through August 2012.

CFS had supplied the family with baby furniture, supplies, clothing worth $250, and $150 for food. Father and mother finally rented a one-bedroom apartment with no appliances, air conditioning, or heater—not suitable for the medically-fragile child. Another apartment had exposed wires and no stove or refrigerator. A pit bull occupied the backyard. A year after detention, CFS described the parents' progress as stagnant; "[t]heir sobriety, home environment, and relationship" were all unpredictable. The child

was not bonded with mother and preferred to be with father. After visits from the parents, the child displayed behavioral and anger issues and was more aggressive. The child called the foster mother "mommy" and viewed her as the primary caregiver. The foster mother, a retired registered nurse, was willing and able to adopt her.

At the 12-month-review hearing, the court terminated reunification services and set a section 366.26 hearing.

*E. Section 366.26*

In February 2013, CFS said the child was bonded to the foster mother. The foster mother wished to adopt the child She was a retired RN, receiving a military pension and other retirement income. She had already adopted four children. She occupied a tidy suburban home. CFS recommended an adoption. The foster mother expressed concern about the parents' behavior during visitation, as they seemed to be plotting to remove the child.

Mother filed a section 388 petition in February 2013. She asserted she had completed a parenting program and was attending 12-step programs and a parenting course. Additionally, she had found a stable residence. She asked the child be returned to her custody or that reunification services be reestablished and visitation be expanded. In response, CFS reiterated the history of the case and concluded that after "almost two and a half years. Time has been up for the parents. [The child] knows no other mother other than her adoptive mother and has referred to her as 'mommy' since she was able to say the words." Time spent with the biological parents caused the child "distress, anxiety, and anger." Her medical problems required greater care and services than the

parents could provide. Moving the child would cause serious trauma and rob her of the "only loving home that she has ever known."

The combined section 388 petition and contested section 366.26 hearings occurred in March and April 2013. Both parents testified. Mother testified she had completed a 60-day outpatient program in January and was attending three or four NA meetings weekly. She had not relapsed since September 2012. She also attended an aftercare program weekly. She had completed another parenting course. Her obligations for resolving her criminal case involved work release, a child endangerment class, payment of a fine, and a DUI class. She had begun working at a fast food restaurant. She was renting a home from her mother who had been abusive toward her as a child. She claimed the deficiencies in the house had been repaired. She asserted she understood her daughter's needs and felt capable of caring for her. They enjoyed their visits and the child showed affection and wanted to stay with mother. Mother believed she and her daughter loved each other and it would be in the child's best interests to be with mother.

Father testified he had visited the child weekly for an hour but missed a few visits. The child was happy to see him and sad when their visits ended. The child called him "mommy" and would hug him and comb his hair. He missed her and asserted they had a strong bond.

The court denied the mother's section 388 petition. The court found there was no beneficial relationship to support the parental bond exception, the child was likely to be adopted, and adoption was in her best interests. The court terminated parental rights and set a post-permanency hearing for adoption.

7

III

BENEFICIAL PARENTAL BOND EXCEPTION

Father contends the juvenile court's selection of adoption as the permanent plan and termination of parental rights was unsupported by substantial evidence because a beneficial parent/child relationship existed between the child and both parents.

A. *Standard of Review*

The substantial evidence test is generally the appropriate standard for review of the juvenile court's findings and orders terminating parental rights for purposes of adoption pursuant to section 366.26. (*In re C.F.* (2011) 193 Cal.App.4th 549, 553; *In re Josue G.* (2003) 106 Cal.App.4th 725, 732.) The review of an adoption exception incorporates both the substantial evidence and the abuse of discretion standards of review. (*In re K.P.* (2012) 203 Cal.App.4th 614, 621-622; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

B. *Discussion*

Adoption is the permanent plan preferred by the Legislature when a child cannot be returned to the care of the parents. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1416.) Once the child was determined to be adoptable, father had the burden to establish termination of parental rights would be detrimental under one of the exceptions to section 366.26, subdivision (c)(1)(B). (*In re C.F. supra,* 193 Cal.App.4th at p. 553.) Section 366.26, subdivision (c)(1)(B)(i), states that there can be no termination of parental rights where the parents "have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." Application of the exception

8

requires the parent to prove that 1) the parent maintained regular visitation and contact, and 2) the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i); *In re Zeth S.* (2003) 31 Cal.4th 396, 412, fn. 9.) Adoption is still preferred. (*In re C.B.* (2010) 190 Cal.App.4th 102, 122.)

Father mainly challenges the assessment report on the issue of visitation, claiming the report was inadequate. That argument lacks merit, however, because the court made a finding there was regular visitation, thus satisfying the first prong of the exception and making father's argument moot on this point. Furthermore, we note that, although father expressed love for his daughter, visitation and contact was inconsistent during the dependency proceedings. Between October 2012 and April 2013, he missed three of his weekly visits. Sporadic visitation does not satisfy the first prong of the beneficial relationship exception. (*In re C.F., supra,* 193 Cal.App.4th at p. 554.)

In any event, father has not satisfied the second prong of the beneficial relationship exception by showing that a benefit existed for the child and termination of parental rights would be detrimental when contrasted with the permanency and stability of adoption. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Section 366.26 requires a comparison of "the strength and quality of the natural parent/child relationship in a tenuous placement against the security and sense of belonging a new family would confer." The parent must establish the parent/child relationship is of such strength that severance would deprive the child of a substantial, positive emotional attachment such that the child would be *greatly harmed* if the relationship was terminated. The parent/child relationship warranting preservation cannot confer "some incidental benefit,"

9

but must result "from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation." (*Autumn H.,* at p. 575.)

In order for the beneficial relationship exception to apply, father must show he "occupies a parental role" in the life of his child. (*In re Mary G.* (2007) 151 Cal.App.4th 184, 207; *In re C.F., supra,* 193 Cal.App.4th at p. 555.) "The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child,[] and (4) the child's particular needs. [Citation.]" (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467; *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1349-1350.)

Father cannot show that he occupied a parental role. There is no evidence that father was capable of providing a stable, safe home and physical care to a young child with serious medical issues. At the age of 28 months, his daughter had lived with the foster mother since she was nine months old. The foster mother was her mother. Her special medical needs required special care. There was nothing about her interaction with the father—or both the parents— that indicated a positive effect on her life.

When considering the totality of factors, the juvenile court had substantial evidence to find that the parental bond exception did not apply and that the child would not suffer "great harm," if her relationship with father was terminated. (*In re Brittany C.* (1999) 76 Cal.App.4th 847, 853.) Father did not offer her any significant benefits. The child's needs were being met by a prospective adoptive mother willing to provide her with the stability, permanency, and special care she needed through adoption.

10

IV

DISPOSITION

Father cannot establish the beneficial relationship exception.  We affirm the

juvenile court's findings and orders terminating parental rights.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
                                                                                              J.

We concur:


RAMIREZ
                        P. J.


KING
                        J.